U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

AMANDA KNAPP-ELLIS and ROBERT SORIANO, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

STELLAR RECOVERY, INC., a Florida corporation,

Defendant.

NO. 2:13-cv-01967-RSM

**ORDER DENYING MOTION TO STAY**

THIS MATTER comes before the Court on Motion to Stay Proceeding by Defendant Stellar Recovery, Inc. ("Stellar"). Dkt. # 19. Neither party has requested oral argument, and the Court finds this matter appropriate for resolution on the briefing. Having considered the briefs filed in support of and opposition to the instant Motion, as well as the remainder of the record and applicable case law, the Court denies Stellar's motion without prejudice to renewal, as stated herein.

## PROCEDURAL HISTORY

Plaintiff Amanda Knapp-Ellis filed this putative class action on October 30, 2013 against Stellar. Plaintiff's amended complaint, filed on April 2, 2014, adds Robert Soriano as a

ORDER DENYING MOTION TO STAY - 1

named Plaintiff and alleges negligent, as well as knowing and/or willful, violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") by Stellar. Dkt. # 21 ("FAC").

The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ["ATDS"] or an artificial or prerecorded voice…to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A). The TCPA defines ATDS as "equipment which has the capacity…to store or produce telephone numbers to be called, using a random or sequential number generator [and] to dial such numbers. 47 U.S.C. § 227(a)(1). The TCPA does not define either "prior express consent" or "capacity."

Plaintiffs allege that Stellar has placed repeated phone calls to them on their cellular telephones, consisting of pre-recorded messages for the purposes of collecting allegedly owed debts. FAC at ¶¶ 5.5-5.16. Both Ms. Knapp-Ellis and Mr. Soriano allege that they did not provide prior express consent to be called. *See id.* at ¶¶ 5.9, 5.14. Plaintiffs contend that Stellar uses automatic dialing machines and pre-recorded messages to reach consumers, in violation of the TCPA, as well as "spoofing" technology to disguise the number from which it is calling and enhance the probability of reaching a consumer. *See id.* at ¶¶ 5.3-5.4.

On April 2, 2014, Defendant filed the instant Motion, seeking to stay this proceeding pending the disposition of five administrative rulemaking petitions (the "Petitions") currently pending before the Federal Communications Commission ("FCC"), to which Congress has delegated the authority to prescribe regulations to meet the requirements of the TCPA. 47 U.S.C. § 227(b)(2). The five Petitions, pending under FCC Docket Number CG 02-278, address, among other issues, the scope of an ATDS and the definitions of "capacity" and "consent" under the TCPA. *See* Dkt. # 20, Exs. 2, 3, 6-8. The instant proceeding is presently at

an early stage, with motions for class certification due on October 30, 2014 and the deadline for discovery on May 27, 2015. *See* Dkt. # 16.

**DISCUSSION**

Under the primary jurisdiction doctrine, the court may stay a proceeding or dismiss a complaint without prejudice "pending the resolution of an issue within the special competence of an administrative agency." *N. Cnty. Commc'ns Corps. V. Cal. Catalog & Tech.*, 594 F.3d 1149, 1162 (9th Cir. 2010) (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008)). Despite the doctrine's name, the court's invocation of the primary jurisdiction doctrine does not indicate that the court lacks jurisdiction over the complaint. *Clark*, 523 F.3d at 1114. "Rather, the doctrine is a 'prudential' one, under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Id.*

The Ninth Circuit constrains application of the primary jurisdiction doctrine to "a limited set of circumstances." *Id.* These circumstances include instances where a claim "requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency," and where "protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *Id.* (quoting *Brown v. MCI WorldCom Network Servs.*, 277 F.3d 1166, 1172 (9th Cir. 2002)). Notably, the doctrine does not require that all claims within an agency's purview be decided by the agency or require courts to secure expert advice every time they are presented within an

issue conceivably within the agency's ambit. *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086 (9th Cir. 2006).

While there is no formula governing application of the primary jurisdiction doctrine, *id.* at 1086, the Ninth Circuit prescribes its application where "(1) the issue is not within the conventional experiences of judges, (2) the issue involves technical or policy considerations within the agency's particular field of expertise, (3) the issue is particularly within the agency's discretion, or (4) there exists a substantial danger of inconsistent ruling." *Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658 F.3d 1038, 1048-49 (9th Cir. 2011) (quoting *Brown*, 277 F.3d at 1172-73)); *see also Davel*, 460 F.3d at 1086-87 (providing that the doctrine is traditionally applied where there is "(1) a need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration").

Upon review of the relevant factors, the Court declines to apply the doctrine of primary jurisdiction at this time. First, the Court is not persuaded that the issues involved in this matter are ones outside the competency of the Court. The pending Petitions, particularly that presented by ACA International (Dkt. # 20, Ex. 2, pp. 1-2) and Communication Innovators (*id.* at Ex. 3, p. 24), seek FCC ruling on the definitions of "capacity" and "consent" under TCPA, as these terms are relevant to the contours of an ATDS. For instance, among its requests, ACA International's Petition seeks FCC clarification as to (1) whether all predictive dialers constitute an ATDS, (2) whether the term "capacity" under the TCPA means present ability, and (3) whether prior express consent attaches to the person incurring a debt or to the telephone number originally provided by the debtor. *Id.* at Ex. 2, pp. 1-2. Interpretation of the statutory

ORDER DENYING MOTION TO STAY - 4

terms "prior express consent" and "capacity" is within the conventional policy experience of judges. *See Pimental v. Google, Inc.*, 2012 WL 1458179, *3 (N.D. Cal. 2012). Indeed, courts in the Ninth Circuit have interpreted these statutory terms in the past. *See, e.g., Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (holding that the TCPA's "clear language mandates that the focus must be on whether the equipment has the *capacity* 'to store or produce telephone numbers to be called, using a random or sequential number generator,' not whether the system actually did so") (emphasis in original); *Gragg v. Orange Cab Co., Inc.*, 995 F.Supp.2d 1189, 1193 (W.D. Wash. 2014) (finding that "capacity" under the TCPA means "present, not potential, capacity"). These statutory interpretation questions are clearly not matters of first impression which would prescribe application of the primary jurisdiction doctrine. *Cf. Clark*, 5213 F.3d at 1114 (applying primary jurisdiction doctrine where claim raised issue of first impression as to whether a technology could be classified as "telecommunication services" or "information services").

Relatedly, the Court is not persuaded that interpretation of the issues raised in this case requires the FCC's technical or policy expertise. To date, Defendant has provided scant information about its dialing systems other than denying that its system, as configured, possesses the present capacity to randomly or sequentially dial phone numbers. *See* Dkt. # 24, p. 3. Defendant has not shown that adjudication of whether its system can be classified as an ATDS, as this term is used in the TCPA, presents particularly complicated technical questions. *See Frydman v. Portfolio Recovery Associates,* LLC, 2011 WL 2560221, *4 (N.D. Ill. 2011) ("Whether the predictive dialers used by defendant are 'automatic telephone dialing systems' or 'autodialers' as these terms are used in the TCPA is a straightforward interpretative questions addressed by prior FCC rulings and some case law."). In addition, while the issues raised by the

pending Petitions certainly fall within the FCC's jurisdiction, interpretation of "capacity" and "consent" are not expressly committed to the agency's discretion. *See Pimental*, 2012 WL 1458179, *4 (finding that although these terms are not defined in the TCPA, Congress has not placed the task of defining them particularly within the FCC's discretion); *cf.* 47 U.S.C. 227(b)(2)(C) (expressly providing the FCAA with the authority to exempt certain calls to cellular telephones from the TCPA).

Finally, the Court does not locate at this time any danger of inconsistent rulings if this matter is not stayed. First, the issues raised in the Petitions do not appear to be dispositive of claims and defenses in this case. For instance, the ACA International and United Health Care Services, Inc. Petitions seek clarification as to whether prior express consent attaches to the debtor or the phone number. *See* Dkt. # 20, Exs. 2, 8. These issues are inapposite in this case, as Plaintiffs deny that prior express consent was given in any manner whatsoever. *See* FAC. As to the definition of "capacity" raised by the ACA International and Communication Innovators Petitions, *see* Dkt. # 20, Exs. 2, 3, Defendant, who thus far only denies using an ATDS, has not shown that the question of whether "capacity" means "present capacity" has any bearing on this case. And despite Defendant's representations to the contrary, none of the Petitions appear to seek an FCC ruling exempting debt collectors from the proscriptions of the TCPA.

Finally, Defendant has not shown that a decision by the FCC on any of the Petitions is imminent. While the FCC has solicited public comments on some of the pending Petitions, *see* Dkt. # 20, Exs. 12, 13, there is no indication that a ruling on these Petitions is forthcoming. It is widely understood that the delay encountered in waiting for agency decision-making is often lengthy. *See Nat'l Commc'ns Ass'n v. Am. Tel. and Tel. Co.*, 46 F.3d 220, 225 (2d Cir. 1995) (noting in denying to apply primary jurisdiction doctrine that "agency decisionmaking often

takes a long time") (internal quotations omitted). Plaintiffs will be unfairly burdened if forced to wait for an unknown period of time for a decision that is unlikely, in any event, to be dispositive of the issues before the Court. *See Pimental*, 2012 WL 1458179, *5 (denying stay where there was "no indication that the FCC has taken up or will take up the issues"). Should Defendant establish at a later stage in this proceeding that the FCC is indeed poised to rule on an issue that may govern claims or defenses in this case, Defendant may renew the instant Motion at that time. For now, the Court is persuaded that a stay will only hinder the parties from discovering the facts and opinions necessary to clarify the contours of the claims and defenses in this case such that the Court, or a jury, may determine whether they are indeed affected by an FCC decision, if any relevant decision does issue.

**Conclusion**

For the reasons stated herein, the Court determines that it is neither necessary nor appropriate to stay this action at this time under the primary jurisdiction doctrine. Accordingly, it is hereby ORDERED that Defendant's Motion to Stay (Dkt. # 19) is DENIED.

DATED this 7 day of October 2014.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE